Eric A. Savage, Esq. (N.J. Bar No. 010491986)
Jessica A. Faustin, Esq. (N.J. Bar No. 211822017)
**LITTLER MENDELSON, P.C.**
One Newark Center, 8th Floor
Newark, New Jersey 07102
973.848.4700
Attorneys for Defendants
.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TIMOTHY SORRENTINO,<br><br>             Plaintiff,<br><br>vs.<br><br>EXPRESS SCRIPTS INC, EVERNORTH HEALTH INC, CIGNA INC, ABC CORPORATIONS 1-5 (FICTITIOUS ENTITIES WHO HAVE LIABILTIY TO PLAINIFF FOR ANY OF THE CAUSES OF ACTION CONTAINED HEREIN)<br><br>             Defendants. | Civil Action No.:  1:22-CV-6769<br><br>**NOTICE OF REMOVAL**<br><br>*Electronically Filed* |

**TO:   THE CLERK AND THE HONORABLE JUDGES**
        **OF THE UNITED STATES DISTRICT COURT**
        **FOR THE DISTRICT OF NEW JERSEY**

Defendants Express Scripts Inc. ("Express Scripts"), Evernorth Health Inc. ("Evernorth") and Cigna Corporation (improperly pled as Cigna Inc.) ("Cigna" and collectively "Defendants") file this Notice of Removal of the above-captioned action to the United States District Court for the District of New Jersey, from the Superior Court of New Jersey, Law Division, Burlington County, where the action is now pending, as provided by Title 28, United States Code, Chapter 89 and states:

## STATE COURT ACTION

1.      Plaintiff Timothy Sorrentino ("Plaintiff") commenced this action on September 21, 2022 by filing a Complaint in the Superior Court of New Jersey, Law Division, Burlington County, captioned "*Timothy Sorrentino v. Express Scripts, Evernorth Health Inc, Cigna Inc, ABC Corporation 1-5 (Fictitious Entities Who Have Liability To Plaintiff For Any Of The Causes Of Action Contained Herein)*" bearing Docket No. BUR-L-1797-22 (the "State Court Action"), alleging claims of discrimination, and  hostile work environment under the New Jersey Law Against Discrimination ("LAD") against Express Scripts Inc., Evernorth Inc., and Cigna Inc.   The State Court Action is currently pending in that court.

2.      Defendants were served with the Summons and Complaint on November 1, 2022. Attached as **Exhibit A** is a copy of the Summons and Complaint served on Defendants.  Attached as **Exhibit B** is a copy of the Acknowledgment of Service filed in the State Court Action.

3.      The aforementioned documents constitute all "process, pleadings and orders" served upon Defendants in the State Court Action pursuant to 28 U.S.C. § 1446(a).

4.      All Defendants consent to the removal of the State Court Action.

## TIMELINESS OF REMOVAL

5.      This Notice of Removal is timely filed within 30 days of November 1, 2022, the date on which service was effectuated, as required by 28 U.S.C. § 1446(b).

6.      This Notice of Removal is also filed within one year of the commencement of the State Court Action and therefore is timely under 28 U.S.C. § 1446(c)(l).

## DIVERSITY JURISDICTION

7.      The United States District Court for the District of New Jersey has diversity jurisdiction over this case based on 28 U.S.C. § 1332.  Diversity jurisdiction exists when the

amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states. *Id.* at § 1332 (a)(1). As explained below, both of these requirements are met.

### A. <u>Citizens of Different States</u>

8.      At the time of filing of the Complaint and at the time of removal, Plaintiff is an individual and purports to be a resident of New Jersey. *See* Exhibit A, ¶1.

9.      At the time of filing of the Complaint and at the time of removal, Express Scripts Inc. is a corporation. For diversity jurisdiction purposes, a corporation such as Express Scripts is deemed a citizen of its State of incorporation and the State where it has its principal place of business. See 28 U.S.C. § 1332(c)(1). As clarified by the United States Supreme Court in *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010), "the phrase 'principal place of business' [in Section 1332(c)(1)] refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities. Lower federal courts have often metaphorically called that place the corporation's 'nerve center.' We believe that the 'nerve center' will typically be found at a corporation's headquarters." (Citations omitted).

10.      Express Scripts is and was at the time Plaintiff filed the Summons and Complaint in State Court, a citizen of Missouri and Delaware under 28 U.S.C. § 1332(c). Express Scripts is incorporated in Delaware and maintains its principal place of business in Saint Louis, Missouri.

11.      Evernorth is and was at the time Plaintiff filed the Summons and Complaint in State Court, a citizen of Missouri and Delaware under 28 U.S.C. § 1332(c). Evernorth is incorporated in Delaware and maintains its principal place of business in Saint Louis, Missouri. Evernorth was formerly known as Express Scripts Holding Co.

12.     Cigna is and was at the time Plaintiff filed the Summons and Complaint in State Court, a citizen of Connecticut and Delaware under 28 U.S.C. § 1332(c). Cigna is incorporated in Delaware and maintains its principal place of business in Bloomfield, Connecticut.

13.     With regard to Defendants "ABC CORPORATIONS 1-5," "[i]t is generally true that "[f]or purposes of removal under this chapter, the citizenship of defendant sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a). The Third Circuit has taken this to mean that fictitious defendants do not bar removal for diversity, unless the complaint contains allegations that identify those fictitious defendants to some extent. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29-30 (3d Cir.1985)." Here, there are no allegations that identify "ABC CORPORATIONS 1-5." Thus, those ABC COPORATIONS should be disregarded for purposes of removal.

14.     Complete diversity exists now and at the time the State Court Action was filed because Plaintiff and all Defendants are citizens of different states.

**B.  Amount in Controversy is Met**[1]

15.     The matter in controversy in the State Court Action exceeds the sum or value of $75,000.00. *See* 28 U.S.C. § 1332(a).

16.     The Complaint filed by Plaintiff alleges violations of the New Law Against Discrimination ("LAD") related to his employment with Defendants. *See* Ex. A.

17.     Plaintiff does not allege a specific amount of damages in his Complaint. Where removal is based on diversity of citizenship and the initial pleading does not demand a specific

---

[1]     Defendants do not concede that Plaintiff's allegations are true or that his claims have any merit. Defendants provide the following only to demonstrate that the amount in controversy, based on the demand and relief sought by Plaintiff, taken as a whole exceeds the $75,000 jurisdictional requirement. Thus, this Court has original jurisdiction over the claims asserted by Plaintiff in this action based on diversity of citizenship under 28 U.S.C. §§ 1332(a) and 1441(a).

sum, "the notice of removal may assert the amount in controversy," and the removing defendant need only establish that it is more likely than not that the amount in controversy exceeds the jurisdictional minimum of $75,000.  28 U.S.C. § 1446(c)(2); *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").  Here, the amount in controversy meets the $75,000 threshold, as follows:

a.    Plaintiff seeks damages in the form of damages for emotional distress, compensatory damages for pain and suffering as well as loss of earnings and other employee benefits, damages for reputational and career development injury, consequential damages, incidental damages, punitive damages, attorney fees and costs of suit,

b.    Plaintiff was employed by Express Scripts as a professional, earning $113,363,76 as of the end of his employment in December 2021. Plaintiff claims lost wages for failure to promote, referring to positions he claims to have sought going back to July 2019.   Plaintiff apparently seeks back pay, including at levels of pay he would have received if he had been promoted, from December 2021 until an anticipated trial date in June 2024.  These claims support a  reasonable estimate of  alleged economic losses (i.e., back pay, front pay, loss of benefits), should he prevail, exceeding the sum or value $75,000.00. *See Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3rd Cir. 1993).

c.    Plaintiff also seeks damages for the alleged emotional harm he suffered, which are recoverable under LAD and add significantly to the amount in controversy.  *See e.g., Maiorino v. Schering–Plough Corp.*, 695 A.2d 353, 361-62, 367 (N.J. Super. App. Div. 1997) (affirming a compensatory damages award that included $55,000 for pain, suffering and humiliation in

employment termination case); *Klawitter v. City of Trenton*, 928 A.2d 900, 919-20 (N.J. Super. App. Div. 2007) (affirming emotional distress award of $79,538 in discrimination case).

d.     Plaintiff also seeks attorney's fees, which are a "necessary part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action [asserted]." *See Goralski v. Shared Techs., Inc*., 2009 U.S. Dist. LEXIS 69042, *16 (D.N.J. Aug. 7, 2009) (citation omitted).  Attorneys' fees awards can be significant in employment cases.  *See e.g. Kluczyk v. Tropicana Prods., Inc.*, 847 A.2d 23, 25-26 (N.J. Super. App. Div. 2004) (affirming damages award in full, including $315,547.45 in counsel fees in discharge case).  Here, because LAD provides for the recovery of attorney's fees to the prevailing party, <u>N.J.S.A.</u> § 10:5-27.1, such fees should be calculated as part of the amount in controversy requirement.

e.     Finally, as stated above, Plaintiff also seeks an award of punitive damages.  Ex. A, Count II).  This Court has previously stated that punitive damages should be incorporated into the amount in controversy calculation, and has further stated that claims for punitive damages should be "aggregate[d]" with requests for compensatory damages.  *See Goralski v. Shared Techs., Inc.*, Civil Action No. 09-2461 (KSH), 2009 U.S. Dist. LEXIS 69042, at *14-16 (D.N.J. Aug. 7, 2009); *see also Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004) ("Claims for punitive damages may be aggregated with claims for compensatory damages unless the former are 'patently frivolous and without foundation.'"  . . . If appropriately made, therefore, a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum.").

f.     Aggregating these amounts, as is appropriate for evaluating removal based on diversity jurisdiction, the amount in controversy exceeds the jurisdictional minimum of $75,000.00.  *See Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007) (aggregating punitive

damages and attorney's fees when calculating amount in controversy); *see also Raspa v. Home Depot*, 533 F.Supp.2d 514, 522 (D.N.J. 2007) (noting that even on its own, "a request for punitive damages will generally satisfy the amount in controversy requirement[.]").

## VENUE

18.     This Notice of Removal has been filed in the United States District Court for the District of New Jersey, the district court of the United States for the district and division within which the State Court Action is pending, as required by 28 U.S.C. §§ 110, 1441(a) and 1446(a).

## NOTICE TO PLAINTIFF

19.     Upon filing of the Notice of Removal, Defendants also gave written notice thereof to Plaintiff's counsel Christopher J. D'Alessandro, Esq., of  Donelson D'Alessandro & Peterson, LLC, pursuant to 28 U.S.C. § 1446(a).

20.     Defendants also filed a copy of this Notice of Removal with the Clerk, Superior Court of New Jersey, Law Division, Burlington County, pursuant to 28 U.S.C. § 1446(d).

21.     By filing the Notice of Removal, Defendants do not waive any objections to service, jurisdiction, or venue, or any other defenses available at law, in equity or otherwise.  Defendants intend no admission of fact or law by this Notice and expressly reserve all defenses and motions.

22.     If the Court should be inclined to remand this action, Defendants requests that the Court issue an Order to Show Cause why the case should not be remanded, providing Defendants with an opportunity to present briefing and argument prior to any possible review.

23.     As required by 28 U.S.C. § 1446(a), this Notice of Removal is signed under Rule 11 of the Federal Rules of Civil Procedure.

## RELIEF REQUESTED

24.     Defendants request that the United States District Court for the District of New Jersey assume jurisdiction over the above-captioned action and issue such further orders and processes as may be necessary to bring before it all parties necessary for the trial of this action.

**WHEREFORE**, Defendants respectfully request that this action proceed in this Court as an action properly removed to it.

                                            **LITTLER MENDELSON, P.C.**
                                            Attorneys for Defendants


                                            _/s/ Eric A. Savage_
                                            _____
Dated: November 28, 2022                    Eric A. Savage
                                            Jessica A. Faustin


4862-6982-5856.1 / 081383-1035

# EXHIBIT A

Christopher J. D'Alessandro, Esq. (279852018)
**Donelson, D'Alessandro & Peterson, LLC**
3 South Broad Street, Suite 3A
Woodbury, NJ 08096
856-839-6058
*Attorneys for Plaintiff Timothy Sorrentino*

| | |
|---|---|
| TIMOTHY SORRENTINO<br><br>                    Plaintiffs,<br><br>v<br><br>EXPRESS SCRIPTS INC, EVERNORTH HEALTH INC, CIGNA INC, ABC CORPORATIONS 1-5 (FICTICIOUS ENTITIES WHO HAVE LIABILITY TO PLAINTIFF FOR ANY OF THE CAUSES OF ACTION CONTAINED HEREIN)<br><br>                    Defendants. | Superior Court of New Jersey<br>Law Division: Civil Part<br>Burlington County<br><br>Docket No.:<br><br><br>CIVIL ACTION<br><br>**COMPLAINT** |

Plaintiff, Timothy Sorrentino ("Plaintiff"), complaining of Defendants Express Scripts Inc., Evernorth Health Inc. and Cigna Inc, collectively referred to hereafter as "Defendants," states as follows:

**<u>PARTIES:</u>**

1.     Plaintiff, Timothy Sorrentino is a person residing in Sewell, New Jersey and at all times relevant herein was a resident of New Jersey.

2.     Defendant Express Scripts Inc. is a Evernorth corporation with a principal place of business of 2040 Route 130 North, Florence, New Jersey.

3.     Defendant Evernorth is a Cigna corporation operating in New Jersey with a primary place of business in Morris Plains, New Jersey, headquartered at One Express Way, St. Louis, Missouri.

4.     Defendant Cigna corporation operating in New Jersey and is the parent corporation of Evernorth and Express Scripts, headquartered at 900 Cottage

Grove Road, Bloomfield Connecticut, 06002.

## JURISDICTION AND VENUE:

5.    The amount in controversy satisfies the Court's jurisdictional requirements.

6.    The State of New Jersey has subject matter and personal jurisdiction over this
controversy.

7.    Venue is proper in this Court, as Defendants operate in New Jersey and maintain
a place of business in Burlington County.

## FACTS COMMON TO ALL CLAIMS:

8.    The Plaintiff is a Lieutenant Colonel in the New Jersey Army National Guard.

9.    The Plaintiff has been in the military for over 20 years, serving in progressively
responsible positions, most recently as a Battalion Commander.

10.   The Plaintiff's awards include the Bronze Star Medal (2nd Award), Meritorious
Service Medal, Army Commendation Medal (5th Award), Army Achievement Medal
(5th Award), the Expert Infantry Badge, Parachutist badge, and Ranger tab.

11.   The Plaintiff is a veteran of the wars in Iraq and Afghanistan.

12.   The Plaintiff has also deployed to a host of other missions with the National
Guard including, most recently, the United States Capitol security mission.

13.   The Plaintiff has served in leadership roles in the Reserve Officer Training Corps.

14.   Upon promotion to Lieutenant Colonel, the Plaintiff serves with honor as the
Battalion Commander of the 1-114th Infantry Battalion; command of an Infantry

battalion is among the most respected command positions within the Army.

15.    The Plaintiff previously  served as the Chief of Staff for the 44th Infantry Brigade
       Combat Team.

16.    Among his military training the Plaintiff counts Ranger School, Airborne School,
       and a variety of advanced leadership courses commensurate with his rank of
       Lieutenant Colonel.

17.    The Plaintiff holds two master's degrees, including an MBA, and is completing a
       third master's in Supply Chain Management.

18.    The Plaintiff was recently accepted to the Doctor of Business program at Thomas
       Edison State University.

19.    The Plaintiff started employment with Defendants in April 2015.

20.    He began his career with Express Scripts as an Operations/Purchasing Manager.

21.    In July 2016, the Plaintiff was promoted to Senior Operations/Purchasing
       Manager.

22.    Between June 2018 and May 2019, the Plaintiff was on military leave, serving as
       the Brigade Executive Officer, 2nd Brigade ROTC, at Fort Dix, New Jersey.

23.    As Executive Officer of the Brigade the Plaintiff was second in command of the
       headquarters responsible for Army ROTC programs in Maine, Vermont, New
       Hampshire, New York, New Jersey and Pennsylvania; a highly demanding and

responsible leadership assignment.

24. Between January 2021 and March 2021, the Plaintiff deployed to Washington, D.C. in support of the New Jersey contingent of troops providing security for the nations' Capitol following the January 6, Capitol civil disturbances.

25. The Plaintiff is currently serving as a Battalion Commander, beginning in November 2021.

26. It is important to note that although the National Guard advertises service as "one weekend a month, two weeks a year," Army officers serving in the National Guard have a far different experience.

27. National Guard officers have a variety of requirements beyond the "one weekend a month..." paradigm.

28. There are significant professional development training requirements for Officers, including the Captains Career Course and Intermediate Level Education, both of which are prerequisites for advancement, requiring weeks, or even months away from home to complete.

29. When serving in a leadership role, as a Platoon Leader, or Commander, or as a member of the primary staff of a higher headquarters, additional time demands are placed on part-time officers in furtherance of maintaining military readiness.

30. While rank and file soldiers may in fact serve "one weekend a month, two weeks a year" for Commanders, there are innumerable responsibilities placing time

demands on their civilian lives.

31.   The Plaintiff, as many reserve component Army Officer commanders before him, often had to make sacrifices in his civilian career in furtherance of his duties and responsibilities to his superiors, his subordinates, and to our nation.

32.   National Guard officers are charged with the weighty responsibility for managing two careers at the same time, military and civilian.

33.   The life of a reserve component Army Officer often requires periods of time spent away from home, family, friends, and work.

34.   During times of war, which encompassed the bulk of the Defendant's over twenty years of military service, military service demands on reserve component officers greatly increase.

35.   Between June 2018 and May 2019, the Plaintiff was on military leave, serving as the Brigade Executive Officer, 2nd Brigade ROTC, at Fort Dix.

36.   In July 2019 the Plaintiff was advised by his superiors that his leave due to military service had impeded his promotion and promotion potential.

37.   The implication of the July 2019 conversation was, had the Plaintiff been present rather than on military leave, he would have been considered for promotions his non-military peers were selected for.

38.   The Plaintiff subsequently applied for more than 32 promotional opportunities between July 2019 and February 2021 and was denied promotion each time.

39.   For several of the promotional opportunities the Plaintiff was told by his

superiors that he was the "runner up."

40. In reference to some of these promotional opportunities, the Plaintiff was advised by his direct supervisor that he would get the position yet was still not selected.

41. In February 2021 the Plaintiff, coming to the realization that he would not be promoted due to his military service, accepted a lateral move.

42. The February 2021 lateral position represented no increase in compensation and resulted in a loss of compensation in that his potential bonus percentage was cut from 20%, to 15%.

43. Defendants questioned the Plaintiff during professional development sessions, as to "how much longer" he was going to be in the Army National Guard, attaching a negative connotation to his continued military service.

44. These statements were made in one-on-ones, by Amy Mendoza, Defendants' Senior Director of Purchasing.

45. Mendoza (along with another Sr. Director and VP) later promoted one of the Plaintiff's non-military peers over the Plaintiff.

46. The Plaintiff met with Human Resources Director Kelly Bronson ("Bronson")

47. To the Plaintiff's knowledge, Bronson is also in the military reserves.

48. This meeting took place when Cigna first acquired Express Scripts.

49. The Plaintiff asked how Bronson navigates the Defendants' military leave policy.

50. Bronson stated he "works it out" with his boss; does not take leave, and instead

does work in his downtime from military duty, for example answering emails at lunch and at night.

51. Bronson explained to the Plaintiff that he is typically on military leave 30 days at a time and is allowed to continue to work while on this duty.

52. When the Plaintiff sought to do the same, he was told by his supervisors that such an arrangement was not acceptable.

53. The Plaintiff was able to continue to work while on one short tour of duty, but thereafter, Defendants' Legal and Human Resources departments adamantly opposed any further such leave.

54. The Plaintiff was confused over this discrepancy and reached out to the Employee Resource Group for guidance on the military leave policy and process.

55. The Plaintiff was advised that application of the military leave policy depends on individual interpretations of that policy by supervisors.

56. The Plaintiff realized this was a problem for reserve component military service members such as himself, and proactively sought to mitigate the situation by bringing it through the proper channels at work.

57. In April 2021 the Plaintiff met virtually with senior Human Resource and Diversity managers to discuss potential updates to the military leave policy.

58. Instead of taking his concerns seriously, the Plaintiff's concerns were met with derision by these managers.

59. The Plaintiff explained that the  April 2021 Military Leave Policy was not being

applied consistently or fairly across the company.

60.    The Plaintiff shared that he was told by superiors he was not in consideration for promotions due to military service.

61.    No action was taken by these Human Resources and Diversity managers in response.

62.    The managers did suggest a vague need for "leader training," but to the Plaintiff's knowledge no such "leader training" took place.

63.    The Plaintiff also complained to these managers about discrimination for his military service.

64.    The Plaintiff feared retaliation however and declined to make a formal report.

65.    The managers in the April 2021 meeting were rude and condescending to the Plaintiff and appeared to be ignorant or uncaring regarding legal protections for the rights of military service members and veterans.

66.    In the months following the meeting the Plaintiff vented to his peers and leaders (outside his direct work unit) regarding the military discrimination he was experiencing in the workplace.

67.    Based on the fact he had not been promoted even after applying for numerous positions within the company he was qualified for;

68.    And that the Plaintiff had been advised by superiors his military leave had

rendered him noncompetitive with his peers;

69.    And the uneven application of the military leave policy;

70.    And the officious, rude, condescending manner his concerns regarding military discrimination had been addressed in the April 2021 meeting with senior Human Resources and Diversity managers;

71.    And the fact he had been passed over again and again for promotion;

72.    The Plaintiff came to the realization that based on illegal discrimination for his military service, the work environment had become hostile.

73.    The hostile work environment directly resulted in an untenable and intentional stagnation of the Plaintiff's opportunity for advancement.

74.    The Plaintiff was faced with the untenable choice of ending his highly successful military career and continuing employment with the Defendants or finding new employment.

75.    The Plaintiff secured new employment and thereafter left employment with the Defendants in December 2021.

76.    Reserve component military service members, veterans and service members are a protected class under the New Jersey Law Against Discrimination ("NJLAD").

77.    Biased-based discrimination against reserve component service members is illegal under the NJLAD.

78.     The Defendants engaged in bias-based discriminated against the Plaintiff due to

his military service.

79.    But for his military service, the Plaintiff would not have been subjected to this bias-based discrimination.

80.    The Defendants' pattern and practice of bias-based discrimination by the Plaintiffs was severe or pervasive enough to make a reasonable reserve component military service member such as the Plaintiff, believe the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

81.    As a result of the Defendants' bias-based discrimination and harassment the Plaintiff has suffered damages.

82.    The Defendants knew or should have known of the bias-based discrimination against the Plaintiff and the hostile work environment which resulted therein.

83.    The Defendants knew or should have known about the bias-based discrimination and harassment and failed to take prompt and effective measures reasonably designed to stop the discrimination and harassment against the Plaintiff.

84.    The Defendants furthermore, regarding military discrimination, negligently failed to have in place well-publicized and enforced antiharassment policies; failed to have effective formal and informal complaint structures; failed to have in place anti-harassment training programs; failed to have in place harassment monitoring mechanisms; and, failed to assure reasonable steps were taken to correct the problems and lack of such policy specifically brought to their attention

by the Plaintiff, even though such problems were known to Defendant's senior Human Resources and Diversity managers.

85. The Plaintiff has suffered damages, including damages for emotional distress, because of the tortious acts of the Defendants.

86. In as much as the bias-based discrimination was willful and purposeful on behalf of the Defendant, the Plaintiff's claims qualify for punitive damages under the NJLAD.

**FIRST COUNT:**
**NEW JERSEY LAW AGAINST DISCRIMINATION (NJLAD)**
**LIABILITY FOR MILITARY SERVICE**

87. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

88. The NJLAD makes discrimination based on military service illegal in the State of New Jersey.

89. The Plaintiff is the member of a protected class, a reserve component service member, an Army officer, serving in the New Jersey Army National Guard.

90. The Plaintiff was treated less favorably with respect to promotions, compensation, and other benefits of employment than employees who were similarly situated but who are not in military service.

91. During his course of employment, the Plaintiff applied for over 32 promotional opportunities and was denied promotion on each occasion.

92. The Plaintiff was a highly qualified employee who met and often exceeded the

qualifications of similarly situated employees who were inexplicably promoted above him on at least 32 occasions throughout his course of employment.

93. The Plaintiff was told by Defendants that his continuing military service was inhibiting his promotional opportunities, and he was questioned by the Defendants as to when he would be leaving military service.

94. But for this illegal, bias-based discrimination for his status as a member of the military service, the Plaintiff would have been promoted by Defendants.

95. Due to the illegal discriminatory actions of the Defendants, the Plaintiff suffered damages including emotional distress, humiliation, and loss of wages.

96. As this behavior was willful on the part of the Plaintiff's supervisors, the Plaintiff qualifies for punitive damages.

97. The Defendants are liable to the Plaintiff for the damages he suffered due to the illegal, bias-based discrimination he suffered in the workplace.

## SECOND COUNT:
## NJLAD - HOSTILE WORK ENVIRONMENT

98. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

99. The Plaintiff suffered a severe and pervasive pattern of bias-based harassment and discrimination based on his protected status as a military service member.

100. The Plaintiff was continually subjected to condescending, demeaning speech and hostile behavior of supervisory employees of the Defendants.

101. The Plaintiff was subjected to being denied promotions on over 32 occasions while

non-military peers of lesser ability were promoted above him.

102. The message sent to the Plaintiff was clear, that he may hold rank in the military, but due to military service, he will not be promoted in Defendants' workplace.

103. The negative impact this conduct had on the Plaintiff perceptions of good name and reputation as a senior military officer was severe.

104. Here the Plaintiff is holding Battalion Command of an Infantry unit, among the most coveted leadership positions in the Army, and the Defendants signal to his peers, subordinates, customers, and superiors that he is not fit for promotion.

105. This action of the Defendants caused the Plaintiff great frustration and intense humiliation in the workplace.

106. When the Plaintiff sought to express his perceptions of discrimination based on military service to the Diversity directors of the Defendants, he was met with condescending, overly officious and demeaning speech, and attitudes from the very professionals who are ostensibly employed by the Defendants to address and mitigate such issues of bias-based discrimination.

107. Based on the illegal, bias-based harassment, the Plaintiff formed a reasonable belief, as any military service member employed by, and similarly situated, in employment with Defendants would, that the terms and conditions of his employment were irrevocably altered based on his protected status as a military service member.

108. The Defendants knew or should have known that this pervasive pattern and practice of bias-based discrimination against, and harassment of the Plaintiff was occurring in the workplace, yet failed to take any remedial actions to stop it.

109. The Defendants delegated authority to the harassing supervisors the authority to control the working environment, and those supervisors abused that authority to

create a hostile work environment.

110.   The Defendants negligently failed to take steps to prevent the harassment from occurring, in fact the Plaintiff urged the Defendants to take action, however they not only declined, but instead engaged in the illegal, bias-baed discrimination and harassment described throughout this Complaint.

111.   The Defendants negligently failed, in relation to discrimination based on military service, to have in place a well-publicized and enforced anti-harassment policy, failed to have an effective formal and informal complaint structure, failed to have in place anti-harassment training programs, and had no harassment monitoring mechanism in place.

112.   When it came to discrimination based on military service, the Defendants effectively treated the Plaintiff as a second class-protected class, and failed to provide the Plaintiff, a military service member, the protections mandated by the NJLAD.

113.   Due to the severe and pervasive bias-based harassment due to his military service, the Plaintiff suffered emotional distress, to include severe embarrassment, degradation, and loss of good name and reputation in the workplace.

114.   The Defendants are liable to the Plaintiff for the damages he suffered due to the severe and pervasive hostile work environment they maintained.

**WHEREFORE** Plaintiff demands judgment jointly and severally against Defendants for, damages for emotional distress, compensatory damages for pain and suffering as well as loss of earnings and other employee benefits, damages for reputational and career development injury, consequential damages, incidental damages, punitive damages, attorney fees and costs of suit, injunctive relief requiring

remediation of Defendants' discrimination and retaliation through affirmative action, and any other relief deemed by the Court to be equitable and just.



Dated: September 21, 2022        By: _____

                                    Christopher J. D'Alessandro, Esq.


## CERTIFICATION OF NO OTHER ACTIONS

I certify that the dispute about which I am suing is not the subject of any other action pending in any other court or a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this complaint, I know of no other parties that should be made a part of this lawsuit. In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.



Dated: September 21, 2022                _____

                                    Christopher J. D'Alessandro, Esq.

# EXHIBIT B

Christopher J. D'Alessandro, Esq. (279852018)
**Donelson, D'Alessandro & Peterson, LLC**
3 South Broad Street Suite 3A
Woodbury, New Jersey 08096
(856) 839-6058
*Attorneys for Plaintiff*

| | |
|---|---|
| **TIMOTHY SORRENTINO** : | **SUPERIOR COURT OF NEW JERSEY** |
| : | **LAW DIVISION** |
| **Plaintiff,** : | **BURLINGTON COUNTY** |
| : | |
| **v.** : | **DOCKET NO. BUR-L-1797-22** |
| : | |
| **EXPRESS SCRIPTS INC,** : | |
| **EVERNORTH HEALTH** : | |
| **INC, CIGNA INC** : | **CIVIL ACTION** |
| : | **ACKNOWLEDGEMENT OF SERVICE** |
| **Defendants.** : | |
| : | |
| : | |

To:  Eric A. Savage, Esq.
        esavage@littler.com

Service of the annexed copy of Summons and Complaint in the matter of Timothy
Sorrentino v. Express Scripts et al, Docket No. BUR-L-1797-22  is hereby acknowledged
this ___1ST___ day of ___NOVEMBER___, 2022

Signed: ___E A Savage___

Print Name: ___ERIC A SAVAGE___
                   ___Littler Mendelson PC___
                   ___Attorneys for Defendants___